## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| HOLLY AND RYAN SWENSON, | **Case No.:** 0:21-cv-00130 |
| Plaintiffs, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| MIDFIRST BANK, d/b/a MIDLAND MORTGAGE COMPANY; EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; and TRANS UNION LLC, | 1. **FCRA, 15 USC §1681** *et seq.* |
| Defendants. | |

Plaintiffs Holly and Ryan Swenson ("Plaintiffs"), through their attorneys, allege the following against Defendants MidFirst Bank, d/b/a Midland Mortgage Company ("Midland"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union LLC ("Trans Union"):

## <u>INTRODUCTION</u>

1.      Plaintiffs' Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendants Experian, Equifax, and Trans Union each a consumer reporting agency, for reporting inaccurate information on Plaintiff's credit report.

2.      Plaintiffs' Complaint also alleges violations of the FCRA, against Defendant Midland for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiffs' dispute from Defendants Experian, Equifax, and Trans Union.

1

## JURISDICTION AND VENUE

3.      The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

4.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

5.      Defendants transact business here; as such, personal jurisdiction is established.

## PARTIES

6.      Plaintiffs Holly and Ryan Swenson are natural persons residing in the city of Le Sueur in Sibley County, Minnesota.

7.      Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. §1681a(c).

8.      Defendant Midland is a financial institution engaged in the business of giving credit and collecting debt. Midland is also a *furnisher*, as defined in 15 U.S.C. § 1681s-2. Upon information and belief, Midland is regularly engaged in the business of furnishing credit information to the credit reporting agencies. Midland is headquartered at 501 NW Grand Boulevard, Oklahoma City, Oklahoma 73118.

9.      Defendant Experian is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. §1681a(d), to third

parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

10.     Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309.

11.     Defendant Trans Union is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through their registered agent, Prentice Hall Corporation, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

12.     Upon information and belief, Defendant Experian, Equifax, and Trans Union (referenced together as "credit reporting agencies" or "CRAs") disburse *consumer reports* to third parties under contract for monetary compensation.

13.     At all relevant times, Defendants Midland, Experian, Equifax, and Trans Union acted through duly authorized agents, employees, officers, members, directors,

heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

14.     Any violations by Defendants were not in good faith, was knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

15.     Defendants Experian, Equifax, and Trans Union report consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

16.     Defendants Experian, Equifax, and Trans Union credit reports generally contain the following information: (i) *Header/Identifying Information*: this section generally includes the consumer's Holly and Ryan Swenson, current and prior addresses, date of birth, and phone numbers; (ii) *Tradeline Information*: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) *Public Record Information*: this section typically includes public record information, such as bankruptcy filings; and (iv) *Credit Inquiries*: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

17.     Defendants Experian, Equifax, and Trans Union gain access to consumer information from various sources, including furnishers who provide consumer

information to Defendants, and information Defendants independently source themselves or through third party providers/vendors or repositories, including computerized reporting services like PACER.

18.     The information reported by Defendants Experian, Equifax, and Trans Union contribute to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendants' consumer credit reports.

19.     The vast majority of financial services lenders (e.g., banks, creditors, lender) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

20.     These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

21.     FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

22.     Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed.

23.     The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

24.     In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

5

25.     Defendants Experian, Equifax, and Trans Union obtained and reported Plaintiffs' consumer bankruptcy information in both the Public Records section of their consumer credit report, as well as individuals account tradelines.

26.     Defendants Experian, Equifax, and Trans Union are well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

27.     Defendants Experian, Equifax, and Trans Union are also aware of the effect of a reaffirmation of debt, which excludes the debt from the bankruptcy discharge.

28.     Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Defendants obtain the bankruptcy case information, as well as from information provided to Defendants from furnishers of account/tradeline information.

29.     Rather than follow reasonable procedures to assure maximum possible accuracy, Defendants Experian, Equifax, and Trans Union report information regarding pre-bankruptcy debts even if that information ignores or contradicts information already known by them, information provided by furnishers of account/tradeline information, and/or information contained in public court records that they have obtained through their independent efforts, or could easily obtain through reasonably available public records.

30.     Defendants Experian, Equifax, and Trans Union are on continued notice of their inadequate post-bankruptcy reporting procedures, including pertaining to account and payment statuses, through the thousands of lawsuits and FTC and Consumer

6

Financial Protection Bureau complaints filed against them for their inaccurate reporting following a consumer bankruptcy.

31.     In or around December 2016, Plaintiffs obtained a mortgage from Midland ("the Account").

32.     On or about February 18, 2020, Plaintiffs filed for a voluntary bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota (St. Paul), petition number 20-30437.

33.     On or about April 21, 2020, Plaintiffs reaffirmed their obligations under the Account, whereby Plaintiffs remained personally liable/responsible for continued payment on the Account. The Account was therefore not included in Plaintiffs' bankruptcy discharge.

34.     Plaintiffs received a discharge in bankruptcy court on or about May 26, 2020.

35.     Before filing for bankruptcy, Plaintiffs never missed a payment on the Account. Plaintiffs have continued to make timely payments on the Account and are current on all payments to date on the Account.

36.     Plaintiffs reaffirmed the Account during bankruptcy, remaining personally liable for the obligation and the Account (debt) was indisputably not discharged. Plaintiffs did this to maintain some of their credit history and to rebuild/re-establish credit through timely monthly payments on the reaffirmed Account.

37.     However, when Plaintiffs pulled their credit reports, Plaintiffs discovered that Defendants Experian, Equifax, and Trans Union were not reporting the Account's positive payment history despite reaffirmation of the debt.

38.     Defendants Experian, Equifax, and Trans Union's reporting was therefore patently false and materially misleading, as the Account was reaffirmed and not discharged by Plaintiffs' bankruptcy and Plaintiffs continued to make timely monthly payments on the Account.

39.     On or about September 16, 2020, Plaintiffs sent letters to Experian, Equifax, and Trans Union, each disputing their inaccurate reporting of the Account.

40.     The letters specifically advised that Plaintiffs did not include the Account in their bankruptcy and continued to make regular payments on the Account.

41.     Upon information and belief, Experian, Equifax, and Trans Union received Plaintiffs' dispute letters.

42.     Upon information and belief, Experian, Equifax, and Trans Union forwarded Plaintiffs' disputes to Midland within 5 business days of receipt.

43.     On or about September 30, 2020, Trans Union responded to Plaintiff Ryan Swenson's ("Ryan") dispute letter. Trans Union's response indicated it deleted the Account from Ryan's credit report.

44.     Upon information and belief, Trans Union failed to respond to Plaintiff Holly Swenson's ("Holly") dispute letter.

45.     Plaintiff Holly pulled her Trans Union credit report to assure it had been updated.

8

46.     Despite deleting the Account from Ryan's consumer report, Trans Union continued to inaccurately report the Account as though it were included and discharged in Holly's bankruptcy. Trans Union inaccurately reported the Account as, "Chapter 7 Bankruptcy."

47.     Upon information and belief, Trans Union did not investigate Holly's dispute and merely forwarded an automated dispute form to Midland. Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and information known by Trans Union through Plaintiff's reported payment history regarding on the Account, Trans Union merely parroted information furnished by Midland despite awareness that the information was factually inaccurate and conflicted with information known by Trans Union.

48.     Upon information and belief, Experian and Equifax failed to respond to Plaintiffs' dispute letters.

49.     Plaintiffs pulled their Experian and Equifax credit reports to assure these were accurately updated.

50.     Experian and Equifax continued to inaccurately report the Account as though it were included and discharged in Plaintiffs' bankruptcy.

51.     Experian inaccurately reported the Account Status as Discharged through Bankruptcy Chapter 7 on both Plaintiffs' reports.

52.     Equifax also inaccurately reported the Account Status as "Included in Bankruptcy" on Plaintiff Holly's report.

53.     Equifax also inaccurately reported the Account Status as "Closed" with Remarks "Bankruptcy Chapter 7" and "Bankruptcy discharged" on Plaintiff Ryan's report.

54.     Upon information and belief, Experian and Equifax did not investigate Plaintiffs' dispute and merely forwarded an automated dispute form to Midland. Rather than perform an investigation based on Plaintiffs' dispute, reasonably available public records, and information known by Experian and Equifax through Plaintiffs' reported payment history regarding the Account, Experian and Equifax merely parroted information furnished by Midland despite awareness that the information was factually inaccurate and conflicted with information known by Experian and Equifax.

55.     Upon information and belief, Midland failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Experian, Equifax, and Trans Union. Consequently, Midland continued to furnish inaccurate data to Defendants Experian, Equifax, and Trans Union.

56.     Midland furnished patently false and materially misleading information and failed to conduct a reasonable investigation of Plaintiffs' dispute of that inaccurate information despite possessing all of the relevant information.

57.     Experian, Equifax and Trans Union reported patently false and materially misleading information, since the Midland Account was reaffirmed and not discharged by Plaintiffs' bankruptcy and Plaintiffs continued to make timely monthly payments on the accounts. These Defendants fail to report the correct payment history and ongoing

payments, and/or report false payment statuses that indicate that the accounts were included in and/or discharged in bankruptcy, instead of their true status of reaffirmed.

58.     Upon information and belief, Experian, Equifax, and Trans Union additionally and/or alternatively were on notice of Midland's unreliable procedures to properly update the reporting of pre-bankruptcy debt that is reaffirmed and may therefore have reported information contradicted by their own records and/or independent knowledge in unreasonable reliance on a furnisher.

59.     As a result of Defendants' conduct, Plaintiffs have sustained actual damages including but not limited to, embarrassment, anguish, and emotional and mental pain.

60.      Plaintiff Holly applied for a job in or around October 2020. Her application required her potential employer to review her credit. Plaintiff Holly felt shameful when her potential employer reviewed her credit, because Plaintiff Holly takes pride in her work. Defendants' inaccurate reporting made it appear as though she was abandoned her mortgage and her home and was therefore untrustworthy.

61.     Upon information and belief, had Defendants Experian, Equifax, and Trans Union accurately reported the Account with the accurate payment history, Plaintiffs' credit score and credit worthiness would have been better.

62.     Defendants' conduct exacerbated Plaintiffs' frustration during the already stressful post-bankruptcy period by hindering Plaintiffs' ability to rebuild their credit.

63.     Upon information and belief Plaintiffs' applied for credit with Capital One and were approved at less favorable terms due to Defendants' inaccurate reporting which was published to the Capital One in their review of Plaintiffs' application.

## COUNT I
**Defendants Experian, Equifax, and Trans Union**
**(Violations of the FCRA, 15 U.S.C. § 1681 *et seq.*)**

64.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

65.     The FCRA requires credit reporting agencies, like Experian, Equifax, and Trans Union, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

66.     Defendants Experian, Equifax, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and also by failing to report accurate information when placed on notice that the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by Defendants or reasonably available to Defendants.

67.     Experian, Equifax and Trans Union knew or should have known of their obligations under the FCRA, especially pertaining to reaffirmed debts during bankruptcy where the consumer agrees to remain liable for a debt and continues to make payments on the debt. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior

12

cases involving Defendants from which they are on notice of their unreasonable procedures concerning the inaccurate reporting of debts during and after bankruptcy.

68.    Upon information and belief, Defendants Experian, Equifax, and Trans Union regularly conduct voluntary public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties.

69.    Upon information and belief, Defendants Experian, Equifax, and Trans Union voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy.

70.    The diligence Defendants Experian, Equifax, and Trans Union exercise in recording consumer bankruptcy filings is not replicated in their reporting of the effect of bankruptcy proceedings and orders upon certain accounts, including the status of accounts that are reaffirmed, despite their knowledge thereof and the reported payment history by tradeline furnishers.

71.    Consequently, Defendants Experian, Equifax, and Trans Union routinely report inaccurate, incomplete, outdated, and materially misleading information about Plaintiffs, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when they possess information inconsistent with the reported information, and possess information establishing that the reported information is in fact inaccurate.

72.    Defendants Experian, Equifax, and Trans Union inaccurately reported Plaintiffs' reaffirmed Account as included in Plaintiffs' bankruptcy when Plaintiffs

continued to make timely payments on the Account, and remained liable for the Account, which was excluded from her discharge.

73.     Defendants Experian, Equifax, and Trans Union therefore negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to Plaintiffs.

74.     The inaccurate reporting of Plaintiffs' information has caused Plaintiffs to suffer from stress, anxiety, headaches, frustration, and emotional and mental pain and anguish, a decreased credit score. Moreover, the inaccurate reporting of Plaintiffs' Account has deprived Plaintiffs of credit opportunities.

75.     Even after Plaintiffs notified Defendants of the inaccurate information it included in Plaintiffs' credit file, Experian, Equifax, and Trans Union continued to inaccurately report the reaffirmed Account as "included in bankruptcy."

76.     When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

77.     When conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

78.     Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When

notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

79.     Thus, in addition to violating the FCRA by failing to follow reasonable procedures, Defendants Experian, Equifax, and Trans Union additionally violated 15 U.S.C. § 1681i of the FCRA by failing to perform a reasonable reinvestigation of the disputed Midland Account even after Plaintiffs notified them of the inaccurate information each reported in Plaintiffs' credit files.

80.     Defendants Experian, Equifax, and Trans Union 's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

    i.    Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

    ii.    Failing to consider all relevant information while investigating Plaintiff's dispute.

    iii.    Failing to include all relevant information when notifying Midland of Plaintiff's dispute.

    iv.    Failing to answer Plaintiffs' disputes.

81.     Instead of reasonably reinvestigating Plaintiffs' dispute, Defendants continued to report the reaffirmed Account as though it were included/discharged in Plaintiffs' bankruptcy.

82.     Defendants' acts, as described above, were done willfully and knowingly, or, alternatively, negligently.

83.     Defendants Experian, Equifax, and Trans Union are a direct and proximate cause, as well as a substantial factor, in causing damage and harm to Plaintiffs.

84.     As a result of the foregoing violations of the FCRA, Defendants are liable to Plaintiffs for actual damages, statutory damages, attorneys' fees and costs, as described herein and as allowable by law.

**COUNT II**
**Defendant Midland**
**(Violations of the FCRA, 15 U.S.C. § 1681s-2(b))**

85.     Plaintiffs incorporate by reference all the above paragraphs of this Complaint as though fully stated herein.

86.     The FCRA requires that furnishers of information like Midland to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the credit reporting agency. If the investigation reveals the information is incomplete or inaccurate, report those results to all credit reporting agencies to which the furnisher has provided the inaccurate information.

87.     Midland knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. Midland obtained or had available substantial written materials that apprised them of its duties under the FCRA. Despite knowing these legal obligations, Midland acted consciously in breaching its known duties and deprived Plaintiffs of their rights under the FCRA.

88.     Plaintiffs disputed the Midland tradeline through all three national CRAs: Defendants Experian, Equifax, and Trans Union.

89.     Thereafter, the credit reporting agencies forwarded Plaintiffs' disputes to Midland, notifying Midland that Plaintiffs were disputing the information it had furnished about the Account.

90.     Midland received notice of Plaintiffs' dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

91.     Midland continues to furnish inaccurate information about Plaintiffs to all three CRAs, even though Midland possessed all relevant information about the Account and the inaccuracy that Plaintiffs disputed.

92.     The inaccurate Midland account materially and adversely affects Plaintiffs' credit standing.

93.     On at least one occasion within the past two years, by example only and without limitations, Defendant Midland violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiffs' dispute to Experian, Equifax, and Trans Union.

94.     Midland violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

(a)    Willfully and negligently failing to conduct an investigation of Plaintiffs' dispute, despite possessing knowledge, information, and records to substantiate Plaintiffs' dispute;

(b)    Willfully and negligently failing to review all relevant information concerning Plaintiffs' dispute;

(c)    Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d)    Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

(e)    Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiffs;

(f)    Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiffs to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

(g)    Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

95.    Midland unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiffs' consumer information furnished to the national consumer reporting agencies.

18

96.     Midland is a direct and proximate cause, as well as substantial factors in causing damage and harm to Plaintiff.

97.     Consequently, Midland is liable to Plaintiffs for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiffs are entitled to Plaintiffs' attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Holly and Ryan Swenson respectfully request judgment be entered against Defendants for the following:

A.  Declaratory judgment that Defendants violated the FCRA;

B.  Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C.  Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D.  Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F.  Awarding Plaintiffs any pre-judgment and post-judgment interest as may be allowed under the law; and

G.  Any other relief that this Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demands a trial by jury of all issues triable by jury.

Respectfully submitted this 19th day of January 2021,

**PRICE LAW GROUP, APC**

By: _s/Jenna Dakroub_
Jenna Dakroub
Bar Number: 0401650
_Attorneys for Plaintiffs,_
_Holly and Ryan Swenson_
**Price Law Group**
8245 N. 85th Way
Scottsdale, AZ 85258
Telephone: (818) 600-5513
Fax: (818) 600-5413
E: jenna@pricelawgroup.com